## HUBBARD v. THE CAMPERDOWN MILLS.

1. The refusal of a motion to recommit a report for further testimony is not error of law appealable to this court.
2. The report of a master confirmed by the Circuit Judge and not appealed from, is final and conclusive upon all matters passed upon in the report; and in the further progress of the cause, such matters are *res judicata*.
3. Where there has been no appeal from a decree confirming the report of a master, an application may be made on Circuit to open the decree; but such an application must be determined by the principles that are applicable in cases of motions for a new trial and petitions for a rehearing on the ground of newly discovered evidence.
4. In a case at law, this court cannot review findings of fact by the Circuit Judge on a motion to set aside a judgment or for a new trial; but it may do so where the motion was made in a case in chancery. In this case, the findings of the court below were approved.
5. While a cause is still pending, it is within the discretion of the Circuit Judge to grant any order necessary to do justice between the parties.
6. Where a debt for money lent, based upon informal action by the board of directors, was established against the company by decree of the court, the Circuit Judge properly refused to reopen the decree upon affidavits showing that evidence of the absence of formal resolution by the board had been discovered after the filing of the decree.

Before KERSHAW, J., Greenville, July, 1886.

This was a motion by the Nonantum Worsted Company and others, creditors and defendants in the cause, to recommit the master's report on claims. The opinion states the facts bearing upon this motion. The Circuit decree, omitting its statement, was as follows:

There are two questions upon which this motion depends. I. Will the court open the report and recommit for such causes as are here alleged? II. Do the proofs establish the alleged error?

The first question is to be determined by reference to the rules and practice of the Court of Chancery governing similar cases, and by the provisions of the Code, section 195. *Hill* v. *Watson*, 10 *S. C.*, 277; *Durant* v. *Philpot*, 16 *Id.*, 125. The circumstances under which the master's report will be opened after confirmation are stated in *Cochran* v. *Lynah, Bail. Eq.*, 516. It is

there said: "In a case like this, when the fund is still in the power of the court and all the parties before it, and when no delay or inconvenience would result from it, it would be a mockery of justice to deny the petitioner the right to open this report, in order to correct an error, which, to put it upon the most favorable footing, originated in the neglect of the party benefited by that error."

Here the fund is in court, and the case in a condition when the relief may be granted if a proper case be made. The grounds relied upon are manifest error, and newly discovered evidence showing the existence of that error. The question as to the sufficiency of the cause must be determined by the same principles as are applicable in cases of motions for a new trial, on the ground of newly discovered evidence, and petitions for a rehearing for the same cause. In order to entitle himself to the relief desired, the party must show some tangible and substantial fact constituting of itself a defence of which the evidence had come to his knowledge since the trial, not particles of testimony, as they are called, or cumulative testimony. To this must be added that the party had no means of discovering the fact by the exercise of close diligence.

In *Vandersmissen's Case* (5 *Rich. Eq.*, 519), the papers whose discovery was made the ground of the application for leave to file a bill of review, had been in the possession of counsel for the petitioner during and before the trial, but being in the French language, folded and not endorsed, had been overlooked and not discovered until after the original cause had been determined. It was contended that this could not be considered newly discovered evidence, but Judge Colcock, delivering the opinion of the court, said: "I think neither the rule nor the reason of the rule go so far. A man may have possession of a paper and not know it; and the affidavits are satisfactory on that point. In the most guarded exercise of the power of reviewing cases it is only necessary to ascertain that no imposition is attempted to be practised on the court as to the knowledge of the existence of the evidence offered. If the paper was not examined, or was not seen, being among others not thought to be important, it is a case of newly discovered evidence. It is a case, too, widely differing (I

conceive) from the cases which speak of one having possession of a paper not being entitled to use it. There are cases when the person having possession of a paper, also had full knowledge of its contents, and through culpable negligence or forgetfulness failed to produce it."

This is the most favorable statement of the law I have found tending to support the motion. But it is always a question of due diligence in availing himself of the means of information at hand, which will affect a party. As said by Lord Eldon in *Younger* v. *Keightley* (16 *Ves.*, 353): "The question always is, not what the plaintiff knew, but what, using due diligence, he might have known."

The resolutions in regard to the issue of the bonds secured by the mortgage is what is relied on as evidence, whose new discovery is to entitle the moving parties to a rehearing before the master. It is the only alleged newly discovered evidence recited in the affidavit of Mr. Heyward, upon which the application is rested. These resolutions were entered on record with the mortgage in June, 1883, in the office of the register mesne conveyance. These are creditors of the Camperdown Mills and bound to take notice of the mortgage and all that its records would show. One of the resolutions provides for the use of the bonds as collateral security for notes, and it was the duty of these creditors to inform themselves upon this point before the reference. There was no attempt to conceal any of the facts from counsel or any of the parties, so far as the evidence shows. In the complaint it is alleged that some of the bonds were used as collaterals, of which it is stated that Julius C. Smith held one. This bond held by Mr. Smith was deposited with him under the same authority and by the same action of the directors as those given to Mr. Beattie and the bank, and these last deposits might have been discovered in the same way or by the same means as the similar use of that to Mr. Smith, no doubt. George F. Hall states that he got his information that $4,500 worth of said bonds had been transferred to resident directors from Mr. Beattie, and Mr. Beattie says he told him that all the bonds in Greenville were held as collateral security. Certainly, the knowledge that part of the bonds had been used as collateral security by the

Greenville directors, was sufficient to put any prudent man on the inquiry as to whether other bonds had not been similarly used. Everything that the books could show was accessible to these parties and their counsel, by the employment of the proper means at their command, and there being enough known to them to put them on the inquiry, it was their duty to pursue the investigation. The failure to do so was a want of reasonable diligence on their part, and having had their day in court, they must take the consequence of their neglect.

II. But when we come to consider the merits of the application, it must equally fail. The purpose with which the bonds in question were issued is declared in the preamble of the resolutions authorizing them to be "to provide commercial capital for the proper management of the business of the company." This was to be accomplished by the sale of the bonds or by their use as collaterals. In the course of business it became necessary to raise money to buy cotton and to pay the employees of the mill, or to stop. An application was then made to the Bank of Greenville and the resident directors to advance the money needed, and to hold the bonds as collateral security until they could be sold outright. This arrangement was made, and the money advanced, and the bonds deposited as collateral security with the bank and the resident directors.

This, Messrs. Julius C. Smith, Wm. Wilkins, Alexander McBee, H. C. Markley, and T. Q. Donaldson testify, was done with the full knowledge and consent of the board of directors, and the money used to carry on the mill; and all this was done before the bonds were taken by the Nonantum Worsted Company, the principal moving creditor. Mr. Hamlin Beattie also testifies to the same effect, stating that it was agreed by six out of eight directors, being all those resident here, that the bonds held here (for sale) should be pledged as collateral security for loans and advances, and under this agreement and arrangement they were deposited and the money advanced on them, as found by the master; and that about the 21st January, 1885, when the special meeting of the stockholders was held, he informed George F. Hall, the treasurer of Camperdown Mills and of the Nonantum Worsted Company, that all the bonds in Greenville were held as collateral, &c.

These affiants are well known gentlemen of the highest integrity and most incontestible truthfulness, and their statements must be taken as true in every particular. If true, then there has been no improper or unauthorized use of said bonds, and if they were not pledged by resolution of the directors duly assembled, the company, with their knowledge and approval or gratification, have received the benefit of the money advanced on the said bonds, and the transaction, in law and equity, must stand as against the said company and all creditors.

It follows that the motion must be dismissed, and it is accordingly so ordered. Also ordered that the moving parties pay ten dollars cost of motion.

*Messrs. Perry, Perry & Heyward* and *Stokes & Irvine,* for appellants.

*Messrs. Wells & Orr* and *T. Q. & A. H. Donaldson,* contra.

April 26, 1887. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This action was instituted by certain stockholders of the "Camperdown Mills," an incorporated manufacturing company of Greenville, for the sale of the property, injunction, the appointment of a receiver, &c. See former case, 25 *S. C.,* 496. Among other things, an order was passed directing the master to publish a notice for six months in the cities of Boston, Philadelphia, and Greenville, requiring the creditors of the defendant corporation to present and prove their demands, "the amount, date, and rank of their respective claims." The master published the rule as therein required, and a number of claims were established before him. He reports, "that on June 15, 1883, the said Camperdown Mills, through its officers duly authorized thereto, issued bonds to the amount of $75,000, and to secure the same executed a mortgage on all the machinery, fixtures, franchises, and leases to Hamlin Beattie, as trustee. Some of these bonds were afterwards negotiated, and have been proved before him under the order aforesaid; others were pledged as collaterals to secure money borrowed, and the notes thus secured have also been proved before him, and are set out in

exhibit A, hereunto attached. These bonds and the notes secured by them as collaterals are entitled to priority of payment out of the proceeds of sale of the said machinery, fixtures, franchises, and leases," &c.

This report was filed on November 11, 1885, and at the next term of the court was confirmed by Judge Wallace, without objection, December 4, 1885. The case was brought up on appeal to this court, but upon points no way connected with the report confirmed as stated, in relation to the debts proved and their priorities. But at the next term, on March 27, 1886, a motion was made before the presiding judge for "an order recommitting the report of the master on claims, for the purpose of taking additional testimony." This motion was refused without prejudice, and at the July term (1886) the motion to "open and recommit" was renewed, and affidavits were submitted *pro* and *con.*

Those submitted in support of the motion alleged, substantially, "That since the confirmation of the report evidence has been discovered, showing that certain of the claims of exhibit A of said report are not entitled to rank as reported by the master, viz., two notes of Hamlin Beattie amounting to $15,501.26, and certain demands designated as 'claims' of the Greenville National Bank, amounting to the sum of $16,466; that the master has reported these claims as entitled to payment upon exhibit A, upon the ground that they are secured by certain mortgage bonds of the said Camperdown Mills, claimed as collaterals by the said Hamlin Beattie and the bank, whereas the evidence above referred to shows that said bonds have never been hypothecated, and are not legal demands against the said Camperdown Mills; that the evidence referred to is to be found in the minute book of the said Camperdown Mills, which book the attorneys for these defendants were not allowed to examine until some time after the adjournment of November term of the court," &c.; that the resolution of the company, authorizing the bonds to be hypothecated, was as follows: "Resolved further, that the said bonds may be used as collateral security for notes, as in the discretion of the board may be deemed expedient," but that there was no formal resolution of the board hypothecating the bonds claimed as collateral security by Beattie and the bank; that the said Hamlin Beattie is presi-

dent of the bank, and a large number of the bonds were entrusted to him for sale, and he now claims the right to hold the same to indemnify said bank for losses sustained upon certain drafts drawn by the agent of the company and negotiated in bank, as also for statutory damages arising upon the protest of said drafts; and that no authority appears for such use of the bonds.

On the other side, it was opposed to this, in substance: that the company was pressed; that there were eight directors, two of them non-residents of the State, and could not be easily summoned, and that the six resident directors swear "that they are cognizant of the history of the hypothecation of the said bonds; that the first effort of the directors was to sell the bonds outright to the stockholders in amounts proportioned to the stock held by each respectively, but certain of the stockholders refused. It became necessary to advance money to buy cotton and pay employees or stop. Application was then made to the bank and resident directors to advance money and hold the bonds as collateral security until they should be realized upon, instead of taking the bonds outright; and this arrangement was made, and the money advanced and the bonds deposited as collateral security with the bank and the resident directors. This was done with the full knowledge and consent of the board of directors, it being the only way in which funds could be raised to carry on the mill. These bonds were so used for actual money advanced to the mill, and before the bonds were taken by the Nonantum Worsted Company," &c.

The Circuit Judge, Kershaw, refused the motion to vacate the order of confirmation and recommit the report, upon two grounds: First, that reasonable diligence had not been exercised in reference to the alleged newly discovered evidence; and second, that upon the merits the evidence, if admitted, would not change the result. From this order the appeal comes to this court, upon the following grounds: I. That his honor erred in deciding that the motion "must be determined by the same principles as are applicable in cases of motions for a new trial on the ground of newly discovered evidence, and petitions for a new hearing of the cause." II. That his honor erred in holding that "the bond held by Julius C. Smith was deposited with him under the same authority and

by the same action of the directors as those given to Mr. Beattie
and the bank." III. That his honor erred in holding that the
bonds could be· legally hypothecated without a meeting of the
directors and without the knowledge of the non-resident directors.
IV. That his honor erred in holding that the bonds claimed by
Beattie and the bank were deposited to secure the drafts cashed
by the bank and statutory damages upon protested drafts. V.
That his honor erred in holding that the appellants had not exer-
cised due diligence in the matters in question.

The order of the Circuit Judge refusing the motion is so full
and clear that we can add very little to it. We cannot consider
this as a mere motion, during the consideration of a report, to
recommit it for further testimony. The refusal of such a motion
is not error of law appealable to this court, but is rather one of
those matters which appertain to the conduct of the cause, and
must, from necessity, be left to the discretion of the Circuit Judge.
*Symmes* v. *Symmes*, 18 *S. C.*, 601; *Caulfield* v. *County of
Charleston*, 19 *Id.*, 600.

It is true, there has been no final judgment, in the sense that
the litigation has been entirely ended, as the cause upon other
issues is still in the court. But as to the matters embraced in
the report confirmed without appeal, the order was as conclusive
and final as if they were the only questions in the case. See
*Hand* v. *S. & C. R. R. Co.*, 17 *S. C.*, at page 262, in reference
to the coupons proved before the master by Isaacs, Miller, and
Adger & Co. Indeed, that case is conclusive as to several of the
points made in this. It is there said, in reference to opening a
report of the master, while the case is still in court: "It is true
that there has been no final judgment in the sense that the litiga-
tion has been entirely ended. The case has been before this court
several times, and at different stages particular questions have
been decided. * * * In cases involving many questions, there
is danger of the litigation being prolonged, and it is necessary to
eliminate in their order those fully decided, so as to be able to
make progress with those still undecided." In the case of *Boyce*
v. *Boyce* (6 *Rich. Eq.*, 302), the court says: "We have number-
less adjudications, that where a party had an opportunity to ex-
cept and has not excepted, he cannot again bring the matter before

the master (or the court) on Circuit or on appeal.  The principle is essential to the due and orderly administration of justice, and must have a place in every well constituted forum.  * * *  See the opinion of Chancellor Harper in *Britton* v. *Johnson, Dudley Eq.*, 28.  A party who brings up a partial appeal, loses every ground of appeal then existing which he neglects and leaves behind him, and cannot afterwards stir the objections lost by his supineness and acquiescence.  The door of litigation must at some time be closed."  *Huson* v. *Wallace*, 1 *Rich. Eq.*, 1.

Then, as the matters embraced in the report of the master were *res adjudicata*, how could it be opened and recommitted?  Certainly not under section 195 of the Code.  That section was intended only for the relief of parties, who, by reason of excusable mistake, inadvertence, &c., may have lost the opportunity to be present at the trial or to be represented there, as is suggested by the words, "taken against him."  (See *Steele* v. *The Railroad Company*, 14 *S. C.*, 331, and the authorities there cited.)  There was no such claim in this case.

As the order of Judge Wallace had never been affirmed by the Supreme Court, it was allowable to make an application in the Circuit Court to open it.  *Cothran* v. *Knox*, 17 *S. C.*, 207.  But we agree with the Circuit Judge, that it was proper to determine that application "by the same principles that are applicable in cases of motions for a new trial, on the ground of newly discovered evidence, and petitions for a rehearing for the same cause."  The application was made to the Circuit Judge, and he refused the motion on the ground that the evidence was not sufficient to authorize him to set aside the order of confirmation and recommit the report.  That was a pure finding of fact, and there may be some doubt whether we have the right to review it on appeal.  The rule is, that this court has no right to review findings of fact upon motions to set aside judgments or for new trials in the court below.  *Gibbes* v. *Elliott*, 8 *S. C.*, 63; *LeConte* v. *Irwin*, 19 *Id.*, 556.

We have, however, the right to review the facts as an appellate tribunal in "cases in chancery"; and as this motion to recommit was made in such a case, it may be that we can review the facts considered by the Circuit Judge in his finding.  We have care-

fully read all the affidavits, and we cannot say that the Circuit Judge committed error in holding that the showing was not sufficient to set aside the order of confirmation and recommit the report. Whittaker in his Practice states the rule as follows: "In motions for new trials on the ground of surprise or newly discovered evidence, the strongest possible case must be made out. * * Enough ought to be shown to raise at least a fair and *bona fide* inference, that had the surprise not occurred, or had the newly discovered evidence been introduced, the result might, and probably would, have been different." 2 *Whit. Prac.* (4th edit.), 465.

But it is strongly urged that the motion was an appeal to the large discretionary jurisdiction of the Circuit Judge, sitting as chancellor; that as long as the cause was still pending, and the court in possession of the fund, it was competent for the court to correct any oversight or mistake which had occurred from surprise, and to make any order necessary to do justice between the parties. It is true that the Court of Equity, in the interest of justice, exercises large powers before a matter has been finally disposed of, as in the case of *Gist* v. *Gist* (*Bail. Eq.*, 343), where it is said that "the court is always reluctant, when the case is in its power, to exclude any apparently just claim or defence." In that view, however, the application is not upon strict right, but is addressed to the equitable discretion of the Circuit Judge; and he, being requested to put forth his extraordinary powers, may undoubtedly require the moving party to do equity in order to get equity.

The Circuit Judge in this case does not seem to have been impressed with the equity of the motion. The only fact of importance claimed to have been subsequently discovered, was the absence of any formal order of the board of directors on the books, hypothecating bonds as collateral security for the advances made by Beattie and the bank. There can be no doubt whatever that one of the purposes for which the bonds were issued was to raise money to continue the running of the mills; and there is quite as little that, upon application, Beattie and the bank did advance largely for that very purpose. Debts were pressing, two of the directors were absent from the State, non-residents, and a majority, the other six, authorized, informally it may be, these bonds

to be held by Beattie and the bank as collateral security for advances made by them, as was done in the case of other advances; and upon the faith of this transaction the advances were actually made and used to the relief of the company. Under these circumstances, it seems to us that the Circuit Judge did not abuse his judicial discretion in holding that "there had been no improper or unauthorized use of said bonds, and if they were not pledged by resolution of the directors duly assembled, the company, with their knowledge and approval or gratification, have received the benefit of the money advanced on the said bonds, and the transaction, in law and equity, must stand as against the company and all creditors." See *Ketchum* v. *Duncan*, 96 *U. S.*, 659; *Clafflin* v. *S. C. R. R. Co.*, 8 *Fed. Rep.*, 118.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.